**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **In re:**<br><br>**EDNA JEWELL ROBERTS,**<br><br>**Debtor.** | **Case No. 26-40048-357**<br><br>**Chapter 13** |
| **PETS A LONE SANCTUARY OF LINCOLN COUNTY, MISSOURI, *et al.*,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**EDNA JEWELL ROBERTS,**<br><br>**Defendant.** | **Adv. Proc. No. 26-04015-357** |

## MEMORANDUM OPINION

Debtor Edna Jewell Roberts has been engaged in litigation with Plaintiffs Pets A Lone Sanctuary of Lincoln County, Missouri ("PALS") and Jennifer Raeker-Bickel for years. The parties settled several disputes in 2021, but another controversy soon erupted. It led Plaintiffs to file another lawsuit against the Debtor in 2022, resulting in a default judgment in their favor for approximately $235,000.

Collection efforts prompted the Debtor to commence a Chapter 13 bankruptcy case on January 6, 2026. Plaintiffs, the only creditors that have filed proofs of claim in the case, responded by commencing this adversary proceeding, in which they seek to have the Debtor's debt excepted from discharge pursuant to Section 523(a)(6) of the Bankruptcy Code as arising from a "willful and malicious" injury. However, Section 523(a)(6) does not apply in a Chapter 13 case unless a debtor seeks a so-called hardship discharge under Section 1328(b). *See* 11 U.S.C. § 1328(c)(2) (establishing exceptions to discharge under § 1328(b)). Nevertheless, Section 1328(a)(4)—which is applicable in all Chapter 13 cases—is similar to Section 523(a)(6) and may apply to some of Plaintiffs' claims.

In anticipation of the initial pre-trial conference in this matter, and recognizing my obligation to review questions of subject-matter jurisdiction, I instructed the parties to be prepared to discuss whether Plaintiffs' claims under Section 523(a)(6) are ripe, along with certain issues related to whether the claims are cognizable under Section 1328(a)(4). The parties submitted supplemental briefs on these issues following the pre-trial conference.

For the reasons that follow, I conclude that Plaintiffs' claims, as presently pleaded under Section 523(a)(6), must be dismissed without prejudice as unripe. PALS cannot state a claim under Section 1328(a)(4), but Raeker-Bickel may be able to state a claim with regard to certain of the allegations in the complaint. I will thus permit her to file an amended complaint.

## I. Jurisdiction

The Court has jurisdiction of this adversary proceeding, which arises under Title 11 and relates to the Debtor's bankruptcy case, under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).[1]

## II. Background

The Debtor's debt to Plaintiffs is embodied in a judgment entered on August 2, 2024 by the Circuit Court of Lincoln County, Missouri (the "Judgment"). During the underlying litigation, the court struck the Debtor's pleadings "for gross and repeated discovery violations and refusal to comply with discovery orders of the Court." The court thus found "all the allegations of the Petition filed by Plaintiffs . . . to be true."

For purposes of the issues addressed in this Opinion, I will assume that Plaintiffs' allegations in state court, like the allegations in the complaint in this adversary proceeding, are true, much as I would if the issues were presented in a motion to dismiss for failure to state a claim on which relief can be granted. But I note that the allegations in the state-court petition most likely are binding on the Debtor and are not just presumptively true. Although a panel of the Missouri Court of Appeals stated as recently as 1989 that "[n]either the parties nor our research has disclosed any Missouri case defining the preclusive effect of a default judgment," *Hernandez v. Westoak Realty & Investment, Inc.*, 771 S.W.2d 876, 884 (Mo. Ct. App. E.D. 1989), there does not appear to be any such uncertainty when the default arises because the court

[1] One or more of the claims underlying this adversary proceeding may qualify as a "personal injury tort," as that term is used in 28 U.S.C. §§ 157(b)(2)(B) and (b)(5). But, as explained below, the state court has already liquidated these claims. I am not being called upon to liquidate the claims for purposes of allowance, which would implicate the complex procedures set forth in Sections 157(b)(2)(B) and (b)(5).

strikes the defendant's answer for misconduct. In that situation, the judgment is on the merits, and collateral estoppel precludes the defendant from re-litigating the issues. *See In re Maxey*, 395 B.R. 665, 671 (Bankr. W.D. Mo. 2008); *Treetop Village Property Owners Association v. Miller*, 139 S.W.3d 595, 600 (Mo. Ct. App. S.D. 2004); *In re Marriage of DeWitt*, 946 S.W.2d 258, 261 (Mo. Ct. App. W.D. 1997); *In re Marriage of Dickey*, 553 S.W.2d 538, 539 (Mo. App. W.D. 1977). And issue preclusion applies in exception-from-discharge proceedings. *See Brown v. Felsen*, 442 U.S. 127, 139 n.10 (1979).

With that lead-in, the essential facts are as follows:

In October 2021, the parties entered into a settlement agreement that resolved several underlying lawsuits (the "Settlement Agreement"). Plaintiffs paid the Debtor $215,000, and an insurer contributed an additional $10,000 on behalf of Plaintiffs, for a total payment to the Debtor of $225,000. In return, the Debtor agreed to release Plaintiffs from the claims, counts, and allegations contained in the settled lawsuits and arising from the same underlying events. The parties agreed to jointly dismiss those lawsuits with prejudice.

The parties also agreed not to "make any communications or engage in any conduct designed to disparage each other . . . regarding any of the alleged conduct or facts at issue in the [underlying lawsuits]" and that "for one (1) year . . . [ending] September 21, 2022[,] they will not make any communications or engage in conduct designed to disparage each other . . . [in] any matter whatsoever." The Settlement Agreement further prohibited the parties, as well as "anyone acting on their behalves," from entering "any property owned by each other without [the respective property owner's] prior written consent." The Debtor also "agree[d] and acknowledge[d] that she would not have any communications regarding [the Plaintiffs] with any of PALS' corporate donors, vendors, or sponsors" and that she would not "interfere or attempt to interfere with PALS' business relationships with them."

PALS partners with and receives donations from another non-profit animal shelter, named Dogwood Sanctuary. The Debtor, as of April 2022, was aware of the relationship between PALS and Dogwood. On April 18, 2022, a dispute arose between Dogwood and an individual named Michael Bruner regarding a stray dog, allegedly owned by Bruner, which had been turned in to Dogwood by Bruner's neighbor. During this dispute, Bruner verbally berated the shelter and its owner and cursed Dogwood's owner. The Debtor had been communicating with Bruner and began her own pressure campaign against Dogwood regarding Bruner's dispute. This included the posting of false statements on social media regarding the dispute and her own direct communications with Dogwood's personnel regarding these false statements.

As a result of Bruner's conduct—as encouraged by the Debtor—Dogwood's personnel were fearful of the potential for physical harm if they were to allow Bruner on Dogwood's property to retrieve the dog. On April 19, 2022, Dogwood transferred the dog to PALS via a shelter-to-shelter transfer and informed Bruner that he could retrieve the dog from PALS by going to their location and by paying Raeker-Bickel $50, which is PALS's customary recovery fee. Bruner relayed this information to the Debtor, who responded, "No don't. Don't pay her anything."

That evening, Bruner went to PALS's shelter to inquire about the dog and, "in a menacing and violent manner," confronted Raeker-Bickel by "screaming profanities at her[,] threaten[ing] her[,]" and "direct[ing] false allegations . . . at PALS and Raeker-Bickel, including that he had been told that PALS and Raeker-Bickel steal animals from their owners for money." He added that he had never even heard of PALS or Raeker-Bickel prior to losing his dog and his communications with the Debtor, which included her informing him that PALS and Raeker-Bickel stole animals from their owners. Bruner ultimately agreed to pay the $50 recovery fee and was given the dog, but during that conversation, and while Bruner was leaving, he threatened Plaintiffs and Dogwood's owner by alluding to getting revenge against Plaintiffs, expressing his intention to run over Dogwood's owner with his truck if he were to see her again, violently handling the dog, and intimating that he wished he would have instead just shot the dog. Bruner's behavior intimidated and frightened Raeker-Bickel and a PALS volunteer who was present.

On August 16, 2022, PALS and Raeker-Bickel filed the Lincoln County suit against the Debtor, alleging unjust enrichment and that through her role in Bruner's dispute with PALS, Raeker-Bickel, and Dogwood, the Debtor breached the Settlement Agreement. As previously discussed, the court struck the Debtor's pleadings and, on August 2, 2024, entered judgment in favor of Plaintiffs, specifically finding that the Debtor willfully breached the Settlement Agreement. The court awarded Plaintiffs damages in the amount of $215,000, together with pre-judgment interest of $37,957.81 and the costs of the action, plus post-judgment interest at 9%. Plaintiffs also were awarded $19,040.06 as a sanction for discovery abuses, less any sanctions previously paid by the Debtor.

The Debtor disclosed on her Schedule E/F that PALS holds a $271,997.81 unsecured claim, which represents the vast majority of the Debtor's unsecured debts. PALS and Raeker-Bickel filed proofs of claim in the amount of $328,848.96.

## III. Analysis

### A. Section 523(a)(6) Claims in Chapter 13

#### 1. Application of Section 523(a)(6)

The exception to discharge for willful and malicious injuries in Section 523(a)(6) does not apply in an ordinary Chapter 13 case. *See* 11 U.S.C. § 1328(a) (listing exceptions); *In re LeMaire*, 898 F.2d 1346, 1348 (8th Cir. 1990) (en banc) ("[A] debt which falls within the scope of section 523(a)(6) . . . which may not be discharged under Chapter 7, may nevertheless be discharged if the debtor meets the requirements of Chapter 13."). The exception becomes relevant only if the debtor moves for a hardship discharge under Section 1328(b). *See* 11 U.S.C. § 1328(c)(2).

The Federal Rules of Bankruptcy Procedure are consistent with the Code. Rule 4007(d) requires that "[w]hen a debtor files a motion for a discharge under § 1328(b), the court must set the time to file a complaint under § 523(a)(6) to determine whether a debt is dischargeable." In other words, a Chapter 13 debtor must first move for a hardship discharge under Section 1328(b) before the process to determine whether a debt is dischargeable under Section 523(a)(6) in a Chapter 13 case gets underway. And if a Chapter 13 case is converted to Chapter 7, a creditor has an additional 60 days from the first date set for the new Section 341(a) meeting of creditors to file a complaint to determine whether a specific debt may be discharged. *See* Fed. R. Bankr. P. 1019(b), 4007(c). The Rules thus expressly contemplate—and provide mechanisms for—creditors to pursue Section 523(a)(6) non-dischargeability claims against current and former Chapter 13 debtors if, and when, appropriate.

The foregoing demonstrates that it was not necessary for Plaintiffs to file their adversary proceeding under Section 523(a)(6) when they did. Perhaps I may resolve it anyway; that is a question of ripeness.

#### 2. Ripeness of the claim

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (cleaned up); *Parrish v. Dayton*, 761 F.3d 873, 875-876 (8th Cir. 2014) (same). In addition, "the question of ripeness may be considered on a court's own motion." *National Park Hospitality Association v. Department of Interior*, 538 U.S. 803, 808 (2003). If a claim is not ripe for adjudication, a court should dismiss it. *Texas*, 523 U.S. at 302 (affirming dismissal of case as unripe).

Courts have thus recognized that "[w]hether a Section 523(a)(6) claim in a Chapter 13 case is ripe for decision is a question of constitutional ripeness since resolution of the issue has no meaningful effect until and unless the debtor moves for a hardship discharge, a contingency that occurs in only a small percentage of Chapter 13 cases." *In re Liescheidt*, 404 B.R. 499, 505 (Bankr. C.D. Ill. 2009); *see also In re Young*, 425 B.R. 811, 816 (Bankr. E.D. Tex. 2010) ("Unless and until the debtor seeks a discharge pursuant to § 1328(b), there is no reason to litigate whether the debt at issue is one for willful and malicious injury."); *In re Ang*, 589 B.R. 165, 172 n.6 (Bankr. S.D. Cal. 2018) (collecting cases).

Courts in the Eighth Circuit have not always been consistent in their handling of Section 523(a)(6) claims in Chapter 13 cases. Some courts have dismissed or declined to consider them. *See In re Thompson*, 581 B.R. 300, 311 (Bankr. W.D. Ark. 2017) ("[B]ecause § 523(a)(6) is not applicable in chapter 13 cases, the Court finds that the bank is not entitled to relief under subsection (a)(6) and denies that portion of the bank's complaint."); *In re Parrish*, No. A08-8014, 2009 WL 6338568, at *5 (Bankr. D. Neb. Dec. 1, 2009) ("[B]ecause a § 523(a)(6) debt generally is dischargeable in Chapter 13 . . . this portion of the plaintiff's complaint will not be addressed."). Others have elected to recharacterize them as Section 1328(a)(4) claims. *See In re Shaw*, No. 08-43336, 2009 WL 3208585, at *2 (Bankr. E.D. Mo. Oct. 7, 2009) (determining that because "[a] discharge in Chapter 13 is broader than a discharge in Chapter 7 . . . it is appropriate to determine whether the debt at issue is nondischargeable under 11 U.S.C. § 1328 rather than 11 U.S.C. § 523"); *In re Jones*, No. A19-8027, 2020 WL 908445, at *1-2 (Bankr. D. Neb. Feb. 25, 2020) (stating that § 523(a)(6) does not apply in Chapter 13 and permitting plaintiff to pursue an alternative theory under § 1328(a)(4)). And still others have decided these claims on the merits. *See In re Davenport*, 491 B.R. 911, 922 (Bankr. W.D. Mo. 2013) (resolving merits of creditor's § 523(a)(6) claim); *In re Hopkins*, 469 B.R. 319, 324 (Bankr. W.D. Mo. 2012) (same); *In re Clevenger*, No. 19-42680, 2020 WL 7753313, at *8 (Bankr. W.D. Mo. Dec. 29, 2020) (addressing claim on merits because neither party argued that § 523(a)(6) was inapplicable, and claim was not meritorious anyway).

The Court of Appeals has addressed the issue of ripeness in a related Chapter 13 context, specifically as it relates to the exception to discharge for student loans in Section 1328(a)(2). *See In re Bender*, 368 F.3d 846 (8th Cir. 2004). In *Bender*, the Eighth Circuit concluded that a Chapter 13 debtor's adversary proceeding to determine the dischargeability of her student loan debts, under the "undue hardship" standard, was not ripe for adjudication more than three years before she was expected to receive a discharge. *Id.* at 847-48. The court reasoned that because the key issue for the court to resolve is "whether there is undue hardship at the time of discharge . . . such proceedings should take place relatively close to that date." *Id.* at 848.

*Bender* is not on all fours with the present proceeding. Whether the Debtor's actions were willful and malicious depends on what happened in the past, not what may happen in the

future. But the Court of Appeals also recognized that "the ripeness doctrine allows the federal courts to avoid wasting scarce judicial resources in attempts to resolve speculative or indeterminate factual issues." *Id.* The Debtor may not receive a discharge in this case at all. If she does, it is likely to be a standard discharge, considering the rarity of hardship discharges. And so the efforts that will be required of the parties and the court to decide the Section 523(a)(6) question in this adversary proceeding are likely to be for naught.[2]

I thus conclude that until a Chapter 13 debtor seeks a hardship discharge under Section 1328(b), a creditor's claim of non-dischargeability under Section 523(a)(6) is not ripe for adjudication because "it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300 (cleaned up). Such an action must, therefore, be dismissed without prejudice.

Nevertheless, Section 1328(a)(4), which is applicable in every Chapter 13 case, includes a subset of Section 523(a)(6) claims.[3] There also is precedent, as previously discussed, for treating pleaded Section 523(a)(6) claims as Section 1328(a)(4) claims. *See Shaw*, 2009 WL 3208585, at *2; *Jones*, 2020 WL 908445, at *1-2. Accordingly, to determine whether and to what extent Plaintiffs should be permitted to re-plead, I must determine whether their allegations state a claim on which relief may be granted under Section 1328(a)(4).

### B. Section 1328(a)(4) Claims in Chapter 13

Section 1328(a)(4) provides that a Chapter 13 debtor's discharge does not apply to any debt "for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual." Plaintiffs must establish five elements to succeed under Section 1328(a)(4), each of which I will address in turn.

---

[2] Some cases also suggest that a court evaluating ripeness should consider "the hardship to the parties of withholding court consideration." *Parrish*, 761 F.3d at 875 (cleaned up). The parties have not suggested any such hardship, and for the reasons stated here, I perceive none.

[3] As discussed below, Section 1328(a)(4) is broader than Section 523(a)(6) in one respect because of its treatment of the "willful" and "malicious" elements. I use the term "subset" as a form of shorthand, but it is not completely accurate.

1. Restitution or damages awarded in a civil action against the debtor

For purposes of this analysis, this element is not disputed. Plaintiffs hold the Judgment against the Debtor. It was awarded in a civil action and is for damages.[4]

2. Willful or malicious injury

Section 1328(a)(4) requires that a debtor's conduct have been "willful *or* malicious," which differs from Section 523(a)(6)'s standard of "willful *and* malicious." 11 U.S.C. §§ 523(a)(6), 1328(a)(4) (emphasis added). In other words, any finding that a debtor's conduct was willful *and* malicious, as contemplated by Section 523(a)(6), or that a debtor's conduct was willful *or* malicious, will meet Section 1328(a)(4)'s standard. *See generally Waag*, 418 B.R. at 377 (discussing Congress's decision not to harmonize language of § 1328(a)(4), in this respect, with § 523(a)(6)). Despite the different structure of Section 1328(a)(4), the familiar meanings given to the terms "willful" and "malicious" in the context of Section 523(a)(6) actions are applicable here. *See In re Grossman*, 538 B.R. 34, 39 (Bankr. E.D. Cal. 2015) ("Nothing suggests that Congress intended that the terms 'willful' and 'malicious' should have different meanings within the same statute."); *Jones*, 2020 WL 908445, at *2 ("The Eighth Circuit Court of Appeals has defined those terms for purposes of § 523(a)(6), and the definitions are applicable in § 1328 as well.").

As the Supreme Court observed in *Kawaauhau v. Geiger*, "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." 523 U.S. 57, 61 (1998); *see also In re Luebbert*, 987 F.3d 771, 780 (8th Cir. 2021) ("To meet the willfulness requirement, there must be proof that the debtor desired to bring about the injury or was, in fact, substantially certain that his conduct would result in the injury that occurred.") (cleaned up). "Malicious"

[4] Courts initially disagreed about whether Section 1328(a)(4)'s "awarded in a civil action against the debtor" element required a pre-petition judgment. *Compare In re Byrd*, 388 B.R. 875, 877 (Bankr. C.D. Ill. 2007) ("[A] pre-petition award of restitution or damages for willful or malicious injury is a prerequisite to a finding of non-dischargeability under § 1328(a)(4)."), *with In re Taylor*, 388 B.R. 115, 122 (Bankr. M.D. Pa. 2008) ("[I]f § 1328(a)(4) is interpreted as discriminating between creditors who have obtained a judgment before a petition is filed and those who have not, the provision is absurd and cannot be construed literally."). In recent years, courts have consistently adopted the approach outlined in *Taylor*, concluding that a *pre-petition* award of restitution or damages is not required. *See, e.g.*, *In re Waag*, 418 B.R. 373, 381 (B.A.P. 9th Cir. 2009); *In re Grosso*, 512 B.R. 768, 773 (Bankr. D. Del. 2014); *In re Liukonen*, 670 B.R. 335, 343 (Bankr. E.D. Wis. 2025). Because the Judgment was rendered pre-petition, I need not discuss this element further.

also modifies "injury" and evokes malice, meaning that the conduct must have been "targeted at the creditor at least in the sense that the conduct is certain or almost certain to cause harm." *Luebbert*, 987 F.3d at 780 (cleaned up). And "[m]alice is only implicated by conduct more culpable than that which is in reckless disregard of creditors' economic interests and expectancies." *Id.* (cleaned up). Therefore, *either* the relevant conduct must "deliberately or intentionally" cause injury *or* it must be specifically "targeted at the creditor" and be at least "almost certain to cause harm." *Id.* (cleaned up).

Plaintiffs allege a variety of actions by the Debtor. Depending on their factual development at trial, any or all of them may qualify as "willful or malicious injury." Claims of defamation, threats, aiding and abetting trespass, aiding and abetting criminal assault, and breach of settlement agreement are all alleged in the complaint. For the purposes of Section 1328(a)(4), the Debtor could have had the requisite willful or malicious intent to cause harm with respect to any of this alleged conduct. Therefore, the second element of Plaintiffs' Section 1328(a)(4) claim is met insofar as Plaintiffs may be able to prove at trial that the Debtor acted with the requisite intent.

3. By the debtor

Section 1328(a)(4) expressly requires that the relevant personal injury (or death) have been caused "by the debtor." The Supreme Court has recently considered congressional intent in distinguishing between non-dischargeable debts that arise from conduct or harm directly committed or caused "by the debtor" and those committed or caused by a third party. *See Bartenwerfer v. Buckley*, 598 U.S. 69 (2023). The Court in *Bartenwerfer* interpreted Congress's use of the passive voice in Section 523(a)(2)(A) to indicate that the relevant actor need not be the debtor. *Id.* at 72 ("Written in the passive voice, § 523(a)(2)(A) turns on how the money was obtained, not who committed fraud to obtain it."). Accordingly, it is possible for a debt to be non-dischargeable under Section 523(a)(2)(A) even if the debtor did not commit the fraud, and it was instead committed by a third party (*e.g.*, an agent or partner of the debtor).

In considering the passive construction of Section 523(a)(2)(A), the Court contrasted the active language in of Sections 523(a)(2)(B) and 523(a)(2)(C). *Id.* at 77-78. One of the necessary elements for a debt to be non-dischargeable under Section 523(a)(2)(B) is that "the debtor caused to be made or published with intent to deceive" the relevant written statement. 11 U.S.C. § 523(a)(2)(B). The language of Section 523(a)(2)(C) also specifically identifies the necessary actor, the debtor, as being the beneficiary of the relevant luxury goods or cash advances that are at issue. *See Bartenwerfer*, 598 U.S. at 77-78 ("§ 523(a)(2)(C) presumptively bars the discharge of recently acquired consumer debts owed to a single creditor and aggregating more than $500 for luxury goods or services *incurred by an individual debtor* and cash advances aggregating more than $750 *obtained by an individual debtor*.") (cleaned up). Thus, we

can infer from Congress's use of the passive and active voice in the context of Section 523(a)(2) that subsection "(A) excludes debtor culpability from consideration given that [subsections] (B) and (C) expressly hinge on it." *Id.* at 78.

Section 1328(a)(4) similarly employs an active construction rather than a passive one. In other words, the theory of derivative liability endorsed in *Bartenwerfer* in the context of Section 523(a)(2)(A) does not apply to Section 1328(a)(4) because the language of Section 1328(a)(4) clearly focuses on who caused the personal injury (or death) and not merely who may be liable for it. In *Bartenwerfer's* wake, courts have begun to apply this reasoning to Section 523(a)(6)'s "by the debtor" requirement. *See, e.g.*, *In re Del Rosario*, 668 B.R. 618, 626-27 (B.A.P. 9th Cir. 2025) (applying the reasoning of *Bartenwerfer* to conclude that "by the debtor" in § 523(a)(6) precludes a theory of vicarious liability).

As previously discussed, Section 1328(a)(4) provides an analogue to Section 523(a)(6) in Chapter 13 cases, but with key alterations. The omission of the "by the debtor" requirement is not one of those alterations. *See Waag*, 418 B.R. at 377 (discussing Congress's intent in enacting § 1328(a)(4) and three significant differences between the two discharge exceptions, of which the "by the debtor" requirement is not one).[5] In light of these post-*Bartenwerfer* developments in the case law, which I view as particularly relevant to this discussion of Section 1328(a)(4) because of the parallels and history of the two exceptions, I conclude that *Bartenwerfer's* reasoning similarly forecloses a theory of interpersonal vicarious or derivative liability in the context of Section 1328(a)(4).[6]

Therefore, the Plaintiffs' theories of liability that rely on Bruner's conduct—and not the conduct of the Debtor—do not fall within Section 1328(a)(4). For instance, Bruner's alleged trespass on PALS's property and assault of PALS's personnel was not a "willful or malicious

[5] Although both statutes refer to "injury by the debtor," Section 1328(a)(4) arguably goes further than Section 523(a)(6). It requires "willful or malicious injury by the debtor that caused personal injury." 11 U.S.C. § 1328(a)(4). This double reference to "injury" leaves no doubt that the debtor must be responsible for it.

[6] *Bartenwerfer* and related principles present more challenging interpretive questions in the relatively rare situations in which a non-individual debtor is subject to the Section 523(a) discharge exceptions. *See generally In re ETG Fire, LLC*, 670 B.R. 884, 910-11 (Bankr. D. Colo. 2025) (concluding that "a corporate entity's intent may be determined by imputing to the entity the acts and intentions of [its] management and senior employees" and recognizing that the alternative is "the wrongheaded proposition that corporations cannot have intent at all"). I need not address this issue here.

injury by the debtor," even if it may have been at the urging of the Debtor. However, to the extent that Plaintiffs are alleging a willful or malicious injury *by the Debtor*—which some of Plaintiffs' allegations appear to support—such an injury could be actionable under Section 1328(a)(4) if it meets the statute's other requirements, including that it "caused personal injury."

4. That caused personal injury

"Personal injury" is not defined in the Bankruptcy Code, but "most courts interpreting the scope of § 1328(a)(4)'s 'personal injury' limitation have concluded that § 1328(a)(4)'s use of 'personal injury' includes nonphysical harms." *Liukonen*, 670 B.R. at 345 (collecting cases); *see also Jones*, 2020 WL 908445, at *2 (holding that invasion of privacy is "personal injury" under § 1328(a)(4)). I agree with this majority view.

At first blush, Section 1328(a)(4)'s reference to "personal injury to an individual or the death of an individual" seems to invoke the same subject matter as 28 U.S.C. § 157(b)(5), which requires that "[t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court." Section 157(b)(2)(B) similarly requires that the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution be handled by the district court.

The scope of "personal injury tort" under Section 157(b) is unsettled. *See Stern v. Marshall*, 564 U.S. 462, 479 (2011) ("We need not determine what constitutes a 'personal injury tort.'"). Indeed, courts have adopted three different tests for evaluating whether a claim is a "personal injury tort." *See In re Smith*, 673 B.R. 1, 7 (B.A.P. 8th Cir. 2025) (summarizing the three tests but declining to decide which to adopt). There is the "narrow" test, which holds that the term includes bodily injuries only; the "broad" test, which allows for any non-physical harms to be included; and the "middle view," which provides that torts for non-bodily injuries can be a "personal injury tort," but financial or business injuries cannot. *See In re Gawker Media LLC,* 571 B.R. 612, 620 (Bankr. S.D.N.Y. 2017) (summarizing three approaches and collecting cases); *Liukonen*, 670 B.R. at 345-46 (similar); *In re Interco, Inc.*, 135 B.R. 359, 362 (Bankr. E.D. Mo. 1991) (adopting narrow test).

I conclude, however, that regardless of which interpretation of Section 157(b) I might adopt in an appropriate case, it would not determine the meaning of "personal injury" under Section 1328(a)(4). The two statutes concern entirely different issues—the allocation of responsibility among federal courts versus the scope of debts that may be discharged in a Chapter 13 case—and there is nothing in the language of either statute indicating that the words "personal injury" should refer to the same types of claims. *See Liukonen*, 670 B.R. at 345 ("There is no convincing textual reason to equate the type of personal injury for which an award of

damages may be excepted from discharge under § 1328(a)(4) of title 11 with Congress's use of 'personal injury' to qualify the types of torts to be heard by the district court, rather than the bankruptcy court, under § 157(b)(5) of title 28.").

Moreover, the phrase "personal bodily injury," as used in Section 522(d)(11)(D) of the Bankruptcy Code, contrasts with Section 1328(a)(4)'s wording. Congress's selective use of the qualifier "bodily"—in the only other provision of the Bankruptcy Code where personal-injury claims are discussed—further supports the interpretation that "personal injury," as used in Section 1328(a)(4), is intended to include non-bodily harms.

For these reasons, I conclude that "personal injury" as used in Section 1328(a)(4) is not strictly limited to bodily injuries. Nevertheless, a purely financial injury does not qualify. "Personal injury in § 1328(a)(4) should be defined in contradistinction to injury to property; the emphasis in § 1328(a)(4) is on injury to an individual." *In re Adams*, 478 B.R. 476, 486 (Bankr. N.D. Ga. 2012) (cleaned up). Indeed, "personal" modifies "injury," which "distinguishes injuries to an individual from injuries to property." *Id.* at 487; *see also Ang*, 589 B.R. at 179-80 ("[T]he court is unaware of any case where a property injury was a sufficient basis for recovery under § 1328(a)(4)."); *In re Deluty*, 540 B.R. 41, 47 (Bankr. E.D.N.Y. 2015) (holding that "personal injury" in the context of Section 1328(a)(4) "excludes financial injury, but includes non-physical injuries, not just bodily injury."); *Liukonen*, 670 B.R. at 344-45 (same).

Accordingly, those of Plaintiffs' claims that allege bodily as well as non-bodily personal injuries may proceed; but any claim that involves solely financial injury, or an injury to property, cannot. This means that Plaintiffs' theories of liability sounding in trespass to property, breach of settlement agreement, and litigation misconduct are not ripe.[7] However,

[7] In their supplemental brief, Plaintiffs also advance a theory of *prima facie* tort, which, under Missouri law, "provide[s] a remedy for tortious conduct that does not fit under any traditional theories." *In re President Casinos, Inc.*, 419 B.R. 394, 401 (E.D. Mo. 2009). I conclude, however, that Plaintiffs have not stated a claim for *prima facie* tort. It is not intended as "a duplicative remedy for claims that can be sounded in other traditionally recognized tort theories, or a catchall remedy of last resort for claims that are not otherwise salvageable under traditional causes of action." *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 315 (Mo. 1993). In this case, Plaintiffs have alleged several traditional torts as well as non-tort causes of action (*e.g.*, breach of the Settlement Agreement). Therefore, traditionally recognized causes of action are already squarely at issue in this proceeding and are fully equipped to provide Plaintiffs with a remedy—in fact, they have already provided the Plaintiffs with a remedy in state court. *See Rice v. Hodapp*, 919 S.W.2d 240, 246 (Mo. 1996) (where there is a recognized tort available to remedy an alleged wrong, Missouri law discourages the invocation of *prima facie* tort); *Tamko*

(footnote continued)

Plaintiffs' theories of personal injury based on defamation and threats alleged to have been committed by the Debtor remain viable.

5. To an individual

It is undisputed that Raeker-Bickel is an individual, but PALS is not. As previously discussed, the word "personal" in "personal injury" forecloses claims based on injuries to property. The phrase "to an individual" serves a similar function in foreclosing the possibility that anyone other than a natural person may pursue a Section 1328(a)(4) claim. This contrasts with the language of Section 523(a)(6), which expressly provides that a debt for a "willful and malicious injury by the debtor to *another entity or the property of another entity*" cannot be discharged. 11 U.S.C. § 523(a)(6) (emphasis added). This omission in Section 1328(a)(4) is dispositive, and, as a result, Section 1328(a)(4) contemplates a different scope of creditors and excepts a more limited range of debts from discharge than Section 523(a)(6) does. *See Adams*, 478 B.R. at 486 (concluding that Congress intended this distinction). Indeed, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (cleaned up).

When courts have addressed Section 1328(a)(4) claims, the analysis of the "to an individual" requirement has often been subsumed within the analysis of the "personal injury" element. *See, e.g.*, *Ang*, 589 B.R. at 179-80; *Adams*, 478 B.R. at 486; *Waag*, 418 B.R. at 377; *Liukonen*, 670 B.R. at 344. Where the word "personal" forecloses injuries to property, it will also always foreclose injuries sustained by a corporate entity such as PALS. However, the converse may not always be true. That is, an individual may suffer an injury to his or her property. The "to an individual" requirement would not operate to bar such a claim, but rather the "personal injury" element would play that role. Thus, these are different, albeit overlapping, requirements. Nevertheless, it is clear that PALS is not an individual and cannot pursue its Section 1328(a)(4) claims on its own behalf. Raeker-Bickel may do so, assuming that she meets the other requirements of Section 1328(a)(4).

However, it is less clear whether a non-individual such as PALS may prosecute a claim arising from a personal injury to an individual. In their supplemental brief, Plaintiffs advance the theory that the Judgment in favor of PALS includes compensation for Bruner's verbal assault of PALS's volunteer and of Raeker-Bickel. Does this alleged personal injury to individuals associated with PALS permit PALS to overcome the "to an individual"

---

*Roofing Products, Inc. v. Smith Engineering Co.*, 450 F.3d 822, 830 (8th Cir. 2006) (making the same observation about *prima facie* tort under Misouri law).

requirement in Section 1328(a)(4)? Does PALS have standing to pursue such a claim to the extent it is derived from an injury to an individual?

PALS clearly would not have Article III standing to litigate a claim in federal court on behalf of its volunteer or Raeker-Bickel. *See Mercy Health Network v. Mercy Hospital, Iowa City, IA*, 178 F.4th 449, 456 (8th Cir. 2026) (Stras, J., concurring) ("The prohibition on third-party standing . . . requires parties to generally assert their own legal rights and interests, not those belonging to others.") (cleaned up). But if PALS is correct that the Judgment awarded it damages based on harm suffered by someone else, what authority does a federal court have to determine that the Judgment did not include such an award, or that the state court should not have made such an award, or that the award should not be enforceable in federal court?

Because Section 1328(a)(4) is a relatively recent addition to the Bankruptcy Code, and this question involves language not present in the older Section 523(a)(6), the case law provides little guidance on this rare and complicated question at the intersection of standing, full faith and credit, preclusion, and the *Rooker-Feldman* doctrine. And the parties have not directly raised these questions or briefed this specific issue.

Ultimately, I conclude that I need not answer this question, because all of PALS's claims are insufficient for other reasons. In particular, the verbal assaults at issue were acts of Bruner, not of the Debtor, and thus PALS cannot satisfy Section 1328(a)(4)'s "by the debtor" requirement. Accordingly, I need not reach the question whether PALS may pursue its claim arising from the alleged harm to its personnel.

## IV. Conclusion

For these reasons, I will enter an order that does the following: (1) dismisses all of Plaintiffs' claims under Section 523(a)(6) as unripe; (2) denies PALS leave to re-plead under Section 1328(a)(4), because PALS is not an individual and because, to the extent PALS advances claims that derive from a personal injury to Raeker-Bickel or to an individual who is not a party to this proceeding, that injury was caused by a person other than the Debtor; and (3) grants Raeker-Bickel leave to re-plead under Section 1328(a)4), but only to the extent that her claims involve a personal injury, as opposed to a financial injury or an injury to property, that was caused by the Debtor, as opposed to by Bruner or any other person.

Dated: August 28, 2026
St. Louis, Missouri
cjs

Brian C Walsh
Brian C. Walsh
United States Bankruptcy Judge